## The State of Minnesota *vs.* Lawrence Laliyer.

Upon a voluntary confession of a crime by a prisoner, the jury are not bound to take as true the statement most favorable to the prisoner, nor anything he may have said in his own favor, merely because the State used it against him. They may reject any part of the confession. But it is all important to the prisoner that all he said should be taken into consideration and acted upon by the jury, so that he may have the benefit of anything he may have said in his favor, which they find to be true.

If the jury have reasonable ground of doubt of which crime, or in what degree of crime, the prisoner is guilty, they can only convict of the lowest.

A prisoner's confessions are insufficient for his conviction, without other proof that the crime has been committed; and the "*proof*" required by Sec. 6, Chap. 118, Stat. of Minn., p. 782, is not corroboration merely, but the *corpus delicti* must be proved beyond a reasonable doubt, by evidence *aliunde* those confessions of the prisoner, which directly connect him with the crime charged.

Facts ascertained by reason of a prisoner's confessions may be taken into consideration in establishing the *corpus delicti*.

If there be no evidence that a crime has been committed, it is improper to admit the confession of the accused. But when there is evidence from which a jury may reasonably infer the commission of the offence charged, the confession may then be introduced, the prosecution being still held to the production of the proofs requisite to warrant a conviction.

The Defendant was indicted, in the Second Judicial District Court, held in and for the county of Ramsey, for the murder of Hannah Laliyer, his wife, and was tried at the September term of that Court in 1859, and convicted. A case being made that Court overruled a motion for a new trial, and the case now comes to this Court on the exceptions appearing in the case.

Points of Prosecution.

*First.*—The challenge allowed after the juror Eckford was sworn, was authorized by the Statutes. *Pub. Stat. Sec.* 16, *p.* 773. The presumption is that good cause was shown, and inasmuch as a•bill of exceptions is not provided as to the examination of the evidence, of the bias or incompetency of a juror, and there is no irregularity on the record, or defect of jurisdiction, it is difficult to see how this objection is made a subject of review.

The challenge was submitted to triers. This was objected to but not specifically, or in other words there was no objection, and it is to be presumed that the triers passed upon the juror generally, as to competency under the statute.

But it does not appear that the facts alleged as a ground of challenge were denied; (*See Sec.* 26, *Pub. Stat.* 774,) but in fact may be considered as admitted, the Defendant simply objecting to the challenge being tried. *See United States vs. Cornell,* 2 *Mason,* 91 ; 2 *Graham and Waterman* 192, 193. The Court had no intimation from the counsel that the objection had relation to the trial of the challenge, but necessarily inferred that it related to the fact of the juror having been sworn. It therefore cannot be said that the objection was to the mode of trial, and for this reason it is waived or too general for review. *Commonwealth vs. Stowell,* 9 *Metcalf,* 572.

*Second.*—The action of the Court as to excusing the juror Banning was perfectly regular and within its jurisdiction, and the Court was the judge of the fact of bias. *Sec.* 23, *p.* 774, *Pub. Stat.*

A distinction should be drawn between allowing a challenge and refusing a challenge. The mere fact of setting aside a juror does not show prejudice to the prisoner, and independently of the statute the Court has a certain discretion in setting aside jurors of its own. *People vs. Damon,* 13 *Wend.* 354.

*Third.*—The objection to swearing Marshall as a juror is dependent upon the assumption that the panel was full counting in Mr. Eckford, who had been set aside. This needs no comments.

*Fourth.*—As to the oath. The statute was substantially complied with. *Sec.* 39, *Pub. Stat.* 775 ; *Haritman vs. State,* 2 *Green's Iowa Reps.* 270 ; 2 *Graham on New Trials,* 199.

*Fifth.*—As to the objection to the question put to Capt. Bennett, as to statements of the prisoner, the rule would seem too well settled to need comment.

*Sixth.*—As to the effect of the admissions or confessions of the Defendant—this was the main point in the case. *Sec.* 6 *of the Pub. Stat. p.* 732, provides that such confessions are not *sufficient to warrant* conviction without *proof* that the offence charged has been committed.

Exceptions are taken to the instructions of the Judge upon this point.

The meaning of the statute is obvious, and the Court viewed it rightly.

The statute simply renders *confessions unsupported by other evidence* or standing alone, "*insufficient*" but not inadmissible, that confessions are still evidence as at "Common Law," but must be *corroborated* by other evidence, and this is undoubtedly what is meant by *proof* that is *evidence.* It could not have been intended that the confessions are not to be weighed, unless the other evidence would be sufficient to convict *without such confessions beyond a reasonable doubt*, for that would render such testimony useless and nugatory. *People vs. Hennesy,* 15 *Wend. p.* 155 ; see *Wharton's Crim. Law,* 252, and so as to the *corpus delicti.*

*Seventh.*—As to the charge of the Court that the jury must convict or acquit of murder in the first degree. The Court fully explained the offence of murder as defined by statute, and the charge objected to has reference to the evidence in the case—the degree of guilt of the prisoner rested upon his confession to Ellslayer.

His subsequent statements of the arrest were evidently made to assert innocence, and the jury were instructed to ascertain which statement or confession was to be taken as the true version—the only one that admitted his guilt showed a case of murder in the first degree. If the other statements were to be believed the prisoner was to be acquitted, this was really favorable to the prisoner and was so intended.

*Eighth.*—As to the other objections, their argument carries their refutation.

Points and authorities of Defendant:

*First.*—The court erred in allowing the prosecution to challenge the juror Eckford, after he had heen sworn. *Case, page* 1, *line* 11; 4 *Hawkins,* 387, *ch.* 43; *Tyndall's case, Cro. Cor.* 271; *Wharton's case, Yelv.* 24.

*Second.*—The court erred in submitting the challenge to triers. *Case, page* 1, *line* 27, *and following.*

*Third.*—The court erred in excusing the juror Banning, on the challenge of the prosecution. *See Berni's Report of the Webster case, page* 8; 1 *Am. Crim. Law,* 4*th Ed. Sec.* 2987, *note q. and* 5*th Cushing,* 295.

*Fourth.*—The court erred in allowing the juror William M. Marshall to be sworn, when objected to by the Defendant on the ground that the panel was full, Mr. Eckford having been illegally excused.

*Fifth.*—The oath administered to three of the jurors was not in the form prescribed by Statute, the Statute words, " whom you shall have in charge," being left out. This is not a question of objection or exception, nor was it necessary for the Defendant's counsel to inform the court of the irregularity. It is a matter to which the court is bound to attend. The court must see that the proper oath is properly administered. It is not the business nor the duty of the prisoner to instruct the court in the proper mode of proceeding. Here a statute form of oath being given, it must be followed, nor can a court say any part of that prescribed oath is immaterial.

It should appear affirmatively of record that the proper oath was administered. *Bivens vs. State,* 6 *Eng.* 455; *State vs. Rollins,* 2 *Foster, N. H.* 528; *Harriman vs. The State of Iowa,* 2 *Greene,* 270; *Harren vs. The State of Iowa,* 1 *Greene,* 106; *Graham and Waterman on New Trials, Vol.* 2, *page* 198.

*Sixth.*—The court erred in allowing the question to the witness, Captain Bennett, *case; paye* 5, *line* 4; and to witness Ellslayer, *case, page* 6, *line* 1; also, in refusing Defendant's motion to discharge the prisoner, on the prosecution resting their case. *See case, page* 13, *line* 17. Also, in charging the jury " That the words in the Statute do not mean conclusive proof beyond a reasonable doubt, but it must be sufficient, outside of the confessions which do not relate to identity, to

satisfy the jury of the commission of the crime;" also, in refusing to charge the jury as requested by Defendant's counsel, "That the confessions of the Defendant could not be regarded as the required direct proof of the *corpus delicti*." *Case*, page 15; 2 *Hale's Pleas of the Crown*, 290; 18 *New York Reports*, 179; also, *Amer. Crim. Law*, Sec. 745, *and cases cited ; Amer. Crim. Law*, Sec. 683; *Rex vs. Eldredge, R. and R. Cr. Ca.* 440; *Rex vs. Faulkner, R. and R. Cr. Ca.* 481; *Rex vs. White, R. and R. Cr. Ca.* 508; *Rex vs. Tippet, R. and R. Cr. Ca.* 509; *Wheeling's Case, Leach,* 511; *People vs. Hennessey,* 15 *Wend.* 147; *Hope's case in the Recorder's Crim. Court in New York,* 1 *C. H. Rec.* 150; *3 Shell* ; *Cow. & Hill's notes, page* 423, *note* 233; *and cases cited in Amer. Crim. Law, Sec.* 683; 1 *Greenleaf on Ev. Sec.* 217; *and note 3; 5 Halst.* 163–185; *People vs. Hennessey,* 15 *Wend.* 148; *People vs. Badgeley,* 16 *Wend.* 53; *State vs. Long,* 1 *Hay.* 10 *N. C.* 455; *Sheffield vs. Sheffield,* 2 *Texas,* 79; 1 *Greenleaf on Ev. Sec.* 217; *Amer. Crim. Law, Sec.* 683, 745, 16 *Wend.* 53; *Wills on Circumstantial Ev. p.* 79.

*Seventh.*—The Judge clearly misled the jury in charging that the words "without proof" did not mean proof beyond a reasonable doubt. The jury might and probably did infer from that, that it was not necessary that the first branch of the *corpus delicti, i. e.,* the death, should be proved beyond a *reasonable doubt ;* that that degree of proof was only necessary when it was sought to connect the Defendant with the crime. Whereas, in fact, the rule is the other way, and much stronger proof is required of the commission of the offence. The evidence to make out that proof must be direct, and not confessional; and to connect the Defendant may be wholly circumstantial.

*Eighth.*—The court erred in charging the jury that they must convict of murder or acquit. There was some evidence of a quarrel, and the jury on that might have convicted of manslaughter. The circumstances, too, being so uncertain; the temper of the wife proved so bad ; that of the Defendant so good ;—all might have warranted a jury in finding verdict of manslaughter. *See Case, page* 13, *line* 1, *and testimony of Soens and others not in the case.*

The rule is now, that in all cases the question of malice is to be left to the jury on all the circumstances of the case. *See Coffee vs. The State*, 3 *Yerg.* 283; *and see Dissenting Opinion of Wilde, J. and Briefs of Counsel in the Case of Com. vs. York*, 9 *Metcalf*, 93 *and* 125; *People vs. McCann*, 16 *New York Reports*, 58.

H. J. HORN, Counsel for the State.

WHEELER H. PECKHAM, Counsel for Defendant.

*By the Court.*—EMMETT, C. J. The prosecution gave in evidence on the trial, several distinct voluntary confessions or declarations made by the Defendant, of the agency or participation he had in the crime charged in the indictment. In the confession made to the witness Ellslayer, he admitted that he had killed his wife, by throwing her against a block or log of the house, and then striking her with an axe, and gave as a reason for killing her that she had set some hay on fire, and then was the best time to get her out of the way. He further said that he and one Klaas Tighlman afterwards placed her body upon a horse and carried it about a half mile to an ice house, which they then set on fire, and the same night, after the fire was over, buried the remains. These statements were made at a time when Defendant was endeavoring to persuade the witness to assist in removing the body to a safer place.

In the accounts which the Defendant gave to the witness Capt. Morton, he said that his wife was up stairs crying, and he called to her to come down, but she would not come. That he then went up and got hold of her to bring her down, and while so doing, she fell down the stairs and was killed. At other times he told this witness that his wife had struck him over the head with something. He also stated to him that when he found his wife was dead, he was frightened and had put the body in the ice house to avoid the stench.

In corroboration of these confessions, the prosecution showed that the charred remains of a human body, together with pieces of a female's dress, recognized by a witness as that worn by Mrs. Laliyer when last seen alive, and two or three

47

hair pins, were afterwards found buried as designated by the Defendant, under the ruins of the ice house. It also appeared that the Defendant and his wife lived unhappily together, and that he was desirous of getting rid of her. That she had disappeared from the neighborhood, and had not been seen since the day preceding the night on which the ice house was burned, and further, that a neighbor whose hay had been destroyed by fire just previous to Mrs. Laliyer's disappearance had been told by the Defendant that his, Defendant's, wife had set the hay on fire.

We cannot repeat all the evidence. Suffice it to say that the only *direct* evidence of the Defendant's criminal participation in the death of his wife is to be found in his own declarations. This being the case, it was for the jury to determine which of his several statements, if either, was the true one. The jury, however, were not bound to take as true the statement most favorable to the prisoner, nor indeed anything he may have said in his own favor, merely because the State used it against him. They might have rejected as improbable, or inconsistent with all the circumstances of the case, any one of these confessions, or any portion thereof. But inasmuch as the several statements were before the jury, and were relied on to connect the Defendant with the crime charged, it was all important to him, that all that he had said should be taken into consideration, and acted upon by the jury, that he might have the benefit of whatever he may have said in his own favor which the jury should find to be true.

The Judge, however, charged the jury " that there was no testimony in the case which would warrant the finding of the Defendant guilty of manslaughter." " That he must be found guilty, or acquitted."

This charge we think is erroneous, because it left the jury at liberty to infer that they were not to take into consideration the statements made by the Defendant to Capt. Morton, or that they were untrue in the opinion of the court, or that being true, the facts therein confessed constituted the crime of murder in the first degree. Either of these inferences would be manifestly to the prejudice of the prisoner.

If the crime was committed in the manner stated in the

confession made to the witness Ellslayer, the Defendant is guilty of murder in the first degree, for the facts therein admitted show the killing to have been perpetrated with a premeditated design to effect death.    But if either of the statements made to Capt. Morton be the true history of his conduct, then the homicide would amount to manslaughter only; for whether the killing was voluntary by throwing the deceased down the stairs in the heat of passion during a scuffle or fight which may have ensued after she struck the prisoner over the head, (as unfavorable a view perhaps as the statements will bear,) or involuntarily, while the Defendant was engaged in an unlawful attempt to bring her down by force, still it would not be murder, there being no evidence of a premeditated design to effect her death.

So long, therefore, as it was doubtful which of these several statements, if either, contained the true account of the Defendant's agency in his wife's death, so long was it uncertain of what crime and in what degree he was guilty.    These doubts it was the province of the jury to solve under the charge of the court, and if they had reasonable ground of doubt, of which crime, or in what degree, he was guilty, they could convict of the lowest only.    *Com. Stat.* 782, *Sec.* 2.

Among the numerous questions raised in this case, was one involving the interpretation of *Sec.* 6, *Chap.* 118 *of the Compiled Statutes, page* 782.    The section is as follows:

"A confession of a Defendant, whether made in the course of judicial proceedings or to a private person, cannot be given in evidence against him, when made under the influence of fear produced by threats, nor is it sufficient to warrant his conviction, without proof that the offence charged has been committed."

The doctrine that a confession duly made and satisfactorily proved is sufficient alone to warrant a conviction, without any corroborating circumstance *aliunde*, though asserted to be the rule in the English courts, and established by high authority, has not been followed in the United States, and it has been gravely doubted whether the cases referred to, to sustain the English doctrine, are sufficient for that purpose, it appearing upon an examination, that in every case, there were corrobo-

rating circumstances, with but one exception, and in that even (*Wheeling's case*, 1 *Leach*, 311) the statement of what the court decided is in terms so general that it is not necessarily inconsistent with there having been corroborating circumstances as to the *corpus delicti*, if not as to the criminal agency of the Defendant. 2 *Russ. on Crimes*, 825, *and note* (*b*), *and cases there reviewed.* But however this may be, the recognized doctrine in this country has been that the prisoner's confessions are insufficient for his conviction, without other proof that the crime has been committed. (*Greenleaf's Ev.* 251, *and cases cited in Defendant's brief.*) This doctrine, as remarked by Greenleaf, accorded better with the humanity of the criminal Code, and with the great degree of caution applied to receiving and weiging the evidence of confessions in other cases. But though the doctrine is laid down thus broadly the courts nevertheless, in applying it, were satisfied with corroborating circumstances merely; holding that full proof of the *corpus delicti* was unnecessary, and often that slight corroboration was sufficient. 16 *Wend.* 53; 15 *Wend.* 148. Hence, notwithstanding the humanity claimed for the rule, its application was such as not always to afford the protection necessary to persons accused. It has not unfrequently happened that persons have been convicted upon their own confessions, of crimes of which they were innocent, and instances have occurred where they have even confessed to murders never committed. Numerous cases of this kind are cited in the books, one of the most remarkable of which is that of the two *Booms*, referred to by the Defendant's counsel. 1 *Greenleaf's Ev. Sec.* 214. In that case there was a full confession of the murder by one of the accused, corroborated by the finding of concealed bones, and by other facts calculated to verify the confession. And yet it afterwards appeared that the person confessed to have been murdered was still alive. The bones found, proved to be those of an animal, and it appeared that the accused had been induced to make the confession by the advice of a friend in the hope of securing through the clemency of the Governor of the State, the mitigation of his sentence from death to imprisonment for life.

Such sad instances of man's weakness in view of great pun-

ishment, not only demonstrated the unreliable character of confessions in general, but weakened confidence in any rule which was satisfied with less than proof of the commission of the offence charged, by evidence outside of the prisoner's confessions ; and suggested the necessity of a change.

We think that the section above set forth was intended to correct the defects which experience had shown to exist in the law as it formerly stood, and to provide an additional protection to persons accused of crime.    The language, too, seems apt and appropriate to effect this end, and can mean nothing else unless we take the responsibility of holding that the word "proof" is not used in its ordinary legal acceptation.    Evidence, though it may tend to prove a fact, may yet be very far from demonstrating its existence.    If by proof was meant corroboration merely, the rule in that particular would not be changed.    Had the legislature meant evidence only, they would have made use of other terms, as was done in the very next section but one, where it was provided that a person cannot be convicted on the testimony of an accomplice merely, unless he be *corroborated* by such other *evidence as tends* to convict the Defendant of the commission of the offence.    The distinction between proof and evidence is fully recognized in these two sections.    In the former full proof is necessary, in the latter evidence tending only to convict is sufficient.    To prove then that the offence charged, whether murder, arson, larceny or other crime, has been committed, is to demonstrate, not that a murder, arson, or larceny, but that the particular murder, or other crime has been committed by some one—and applying the section to this indictment, it requires that evidence be produced, outside of the Defendant's confessions, sufficient to induce belief, not only that Hannah Laliyer is dead, but that her death was caused by the criminal agency of another.    And, in view of what we believe to have been the object of the Statute, and the general rule in criminal cases, we hold that the existence of these facts should be established beyond a reasonable doubt. The offence is separable from the guilty agent ; and although a prisoner may be convicted on his own voluntary declarations as to his agency, or participation in a crime, yet the law humanely requires that it shall first be satisfactorily proved by

other evidence, that the crime has actually been committed.

It does not follow, however, that facts ascertained by reason of a prisoner's disclosures are not to be taken into consideration in establishing the *corpus delicti*. On the contrary, it is well settled that a fact so discovered, may, together with the fact that the disclosures of the accused led to its discovery, go to the jury.

Nor do we mean to be understood as holding that the *corpus delicti* must be established beyond a reasonable doubt, before evidence can be introduced of the prisoner's confessions. The order of testimony must always greatly depend upon the discretion of the court. This discretion cannot be controlled by any fixed rules, nor is it desirable to do so, as the order of testimony must to some extent vary with every case. The most that can be done in any case is to determine afterwards whether this discretion has been exercised in a manner prejudicial to the prisoner. If there be no evidence that the crime has been committed, then of course it would be improper to admit the confessions of the accused. But when there is evidence from which a jury might reasonably infer the commission of the offence charged, then we think a sufficient foundation has been laid for admitting the voluntary confessions of the prisoner, the prosecution, however, being still held to the production of the proofs requisite to warrant a conviction. Any other course would result in most cases in substituting the court for the jury in determining these important facts. Where there is an entire failure of proofs this would not be objectionable, and is perhaps oftentimes necessary to protect the accused against any prejudice engendered by suspicious circumstances, but where, as is usually the case, the proofs depend in any degree upon the weight of evidence, or the credibility of witnesses, the jury alone, under the charge of the court, should determine whether the crime charged has been committed.

The order refusing a new trial is reversed and a new trial awarded.