# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0750

State of Minnesota,
Respondent,

vs.

Ibn Marchone Abdullah,
Appellant.

**Filed September 3, 2024**
**Affirmed**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CR-21-23832

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Matthew D. Hough, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Halbrooks, Judge.*

## SYLLABUS

If the state introduces a defendant's confession into evidence at a criminal trial, Minnesota Statutes section 634.03 (2020) requires the state to corroborate the confession by presenting evidence independent of the confession that reasonably tends to prove that

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the specific crime charged in the complaint actually occurred. If the defendant is charged with homicide, the state must present evidence independent of the defendant's confession that reasonably tends to prove that someone, but not necessarily the defendant, caused the death of another person in a criminal manner.

## OPINION

**JOHNSON**, Judge

A Hennepin County jury found Ibn Marchone Abdullah guilty of two counts of second-degree intentional murder based on evidence that he shot and killed his father and his sister. The state's evidence included testimony that Abdullah had confessed to the killings. On appeal, Abdullah argues that the state did not corroborate his confession by introducing other evidence that reasonably tends to prove that he committed the charged crimes. We conclude that the state satisfied its obligation to corroborate Abdullah's confession by presenting evidence independent of the confession that reasonably tends to prove that the specific crimes charged in the complaint actually occurred. Therefore, we affirm.

## FACTS

In 2021, Abdullah owned a duplex in the city of Robbinsdale. He lived in one unit and rented the other unit to his father, Marchone Abdullah, and his sister, Crystal Abdullah.

In the summer of 2021, Abdullah told his half-brother, T.J., that he was angry with their father. Abdullah wanted Marchone and Crystal to move out of their unit and mentioned the possibility of evicting them. Abdullah expressed frustration with their leaving their possessions outside and with a "rent situation." He also told T.J. that he

2

believed that Marchone and Crystal were planning to arrange for some other person or persons to sexually assault him. Abdullah told T.J. that he was "gonna kill the old man."

On December 26, 2021, Abdullah visited T.J.'s home and told him that he "had two bodies on him." Abdullah specifically referred to Marchone and Crystal. While pointing a finger at his own head, Abdullah told T.J. that he had killed them with a "dome shot." Abdullah said that the bodies likely were "stinking" after a few days. Abdullah asked T.J. to help him dispose of the bodies.

T.J. immediately called his brother, C.J., to tell him about his conversation with Abdullah. C.J. drove to Marchone's and Crystal's home to check on them. Upon arriving, he noticed that the front door was ajar. C.J. entered the unit and saw the dead bodies of Marchone and Crystal in the living room, in upright positions in recliner chairs.

C.J. stepped outside and called 911. When the first police officer arrived and entered the residence, he smelled an odor consistent with decomposing bodies and immediately saw two dead bodies in the living room. When the officer looked closely at the bodies, he saw that both had gunshot wounds to the head. Officers also found a semi-automatic handgun and four spent cartridge casings in the home. The serial number of the handgun matched the serial number of a handgun that Abdullah had purchased, and Abdullah's fingerprint was found on the handgun. A forensic scientist determined that the handgun had fired all four of the cartridge casings. A medical examiner later performed autopsies and determined that Marchone and Crystal died of gunshot wounds to the head.

The state charged Abdullah with two counts of second-degree intentional murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2020). The case was tried to a jury on

three days in January 2023.  The state called 17 witnesses, including T.J., who testified about the statements that Abdullah had made to him in the summer of 2021 and on December 26, 2021.  The jury found Abdullah guilty on both counts.  The district court imposed consecutive sentences of 261 months of imprisonment.  Abdullah appeals.

## ISSUE

Did the state present evidence independent of Abdullah's confession that reasonably tends to prove that the specific crimes charged in the complaint actually occurred, as required by Minnesota Statutes section 634.03?

## ANALYSIS

Abdullah makes only one argument on appeal: that the state did not satisfy its obligation to corroborate his confession to his brother, T.J., in the manner required by Minnesota Statutes section 634.03.

## A.

The statute on which Abdullah relies provides, "A confession of the defendant shall not be sufficient to warrant conviction without evidence that the offense charged has been committed . . . ."  Minn. Stat. § 634.03 (2020).  This statute, which has remained "largely unchanged" since its enactment by the territorial legislature in 1851, codifies the common-law *corpus delicti* rule.  *State v. Holl*, 966 N.W.2d 803, 807, 809 (Minn. 2021).  The term *corpus delicti* is Latin for "the body of the crime."  *Id.* at 809.

In *Holl*, the supreme court reviewed the origins of the *corpus delicti* rule, which sprang from an English case in which a man was convicted of murder based on his confession and was executed before the supposed victim of the murder later reappeared,

alive. *Id.* (citing *Perry's Case*, 14 How. St. Tr. 1312 (Eng. 1661)). The supreme court summarized the common-law *corpus delicti* rule by stating that it "generally requires the State to 'introduce evidence independent of an extrajudicial confession to prove that the confessed crime actually occurred.'" *Id.* (quoting *Allen v. Commonwealth*, 752 S.E.2d 856, 859 (Va. 2014)). The supreme court interpreted "the plain language" of section 634.03 to "require[] the State to present evidence independent of a confession that reasonably tends to prove that the specific crime charged in the complaint actually occurred in order to sustain the defendant's conviction." *Id.* at 814.[1]

The supreme court also stated in *Holl* that section 634.03 "does not require that each element of the offense charged be individually corroborated." *Id.* (quotation omitted). Prior supreme court opinions demonstrate that the state must corroborate the elements of a crime that constitute the *corpus delicti* of the crime. The concept of *corpus delicti* is well explained in a respected treatise that the supreme court has cited in discussing the *corpus delicti* rule and section 634.03:

> To establish guilt in a criminal case, the prosecution must ordinarily show that (a) the injury or harm constituting the crime occurred; (b) the injury or harm was caused in a criminal manner; and (c) the defendant was the person who inflicted the

---

[1]The supreme court acknowledged in *Holl* that some of its prior opinions had implicitly allowed the state to corroborate a defendant's confession by introducing evidence of the trustworthiness of the confession. 966 N.W.2d at 810-11. But the *Holl* court clarified that the trustworthiness concept is "absent from the plain language of" section 634.03 and that "[t]o incorporate a trustworthiness standard into the statutory language of Minn. Stat. § 634.03 would require us to add words into the statute that do not exist." *Id.* at 811-12.

injury or harm.[2]  Wigmore maintains that the "orthodox" and "more natural meaning" of corpus delicti includes only the first of these—"the fact of the specific loss or injury sustained"— and does not include proof that the injury was occasioned by anyone's criminal agency.  Some courts have agreed.

Most courts, however, define corpus delicti as involving both (a) and (b).  Under this definition, the corroborating evidence must tend to show that the harm or injury existed and was the result of criminal activity.  The prosecution need not, however, present independent evidence that the defendant was the guilty party.

1 Charles T. McCormick, *McCormick on Evidence* § 146, at 194 (Robert P. Mosteller ed., 8th ed. Supp. 2022) (citations omitted); *see also Holl*, 966 N.W.2d at 807 n.6, 810 (citing 1 *McCormick on Evidence* § 145 (Robert P. Mosteller ed., 8th ed. 2020)); *State v. Lalli*, 338 N.W.2d 419, 420 (Minn. 1983) (citing *McCormick on Evidence* § 158 (2d ed. 1972)); *State v. Hill*, ____ N.W.3d ____, ____, 2024 WL 3490357, at *4 (Minn. App. July 16, 2024), *petition for rev. filed* (Minn. Aug. 15, 2024).

The supreme court's prior opinions reflect the latter view described by *McCormick*, that the *corpus delicti* of a crime generally consists of two components: first, a particular injury or harm that the criminal law seeks to prevent or punish and, second, the criminal nature of the cause of the injury or harm.  For example, in *State v. Grear*, 13 N.W. 140 (Minn. 1882), in which the appellant was convicted of assault, the supreme court stated,

---

[2]Professor Wigmore used somewhat different language by describing the first concept as "the *occurrence* of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing)," and the second as "somebody's criminality (in contrast, e.g., to accident) as the source of the loss."  7 John Henry Wigmore, *Evidence* § 2072, at 524 (Chadbourn ed., 1978).  Similarly, Judge Learned Hand described the first concept as "the injury against whose occurrence the law is directed."  *Daeche v. United States*, 250 F. 566, 571 (2d Cir. 1918).

"Evidence that the offence charged has been committed by *some* person is all that is required" by the *corpus delicti* statute. *Id.* at 140. The first component of the *corpus delicti* in that case was established by evidence that the victim had been shot and injured. *Id.* The second component of the *corpus delicti* was established because "there certainly was evidence showing that the woman mentioned had been shot . . . by somebody" and there was "nothing to raise any suspicion that she had shot herself, nor that she had been shot by accident." *Id.*

As previously stated, the specific crime with which Abdullah was charged and of which he was convicted is second-degree intentional murder. *See* Minn. Stat. § 609.19, subd. 1(1). The supreme court has applied the *corpus delicti* statute in a murder case. In *State v. Laliyer*, 4 Minn. 368, 4 Gil. 277 (1860), the supreme court described the *corpus delicti* of murder as follows:

> To prove then that the offence charged . . . has been committed, is to demonstrate . . . *that the particular murder . . . has been committed by some one* . . . . [A]pplying the [statute] to this indictment, it requires that evidence be produced, outside of the Defendant's confessions, sufficient to induce belief, not only *that [the defendant's wife] is dead, but that her death was caused by the criminal agency of another.* . . . The offence is separable from the guilty agent; and although a [defendant] may be convicted on his own voluntary declarations as to his agency, or participation in a crime, . . . it shall first be satisfactorily proved by other evidence, that the crime has actually been committed.

*Id.* at 377-78, 4 Gil. at 284-85 (emphasis added); *see also State v. Voges*, 266 N.W. 265, 266 (Minn. 1936) (stating that *corpus delicti* of homicide is "the death of a human being and that a criminal agency produced it").

7

In light of this caselaw, if the specific crime charged in the complaint is homicide, the state must present evidence independent of the defendant's confession that reasonably tends to prove that *someone* caused the death of another person in a criminal manner. *See Holl*, 966 N.W.2d at 814; *Voges*, 266 N.W. at 266; *Laliyer*, 4 Minn. at 377-78, 4 Gil. at 284-85. In a case of homicide, the state is *not* required to corroborate a defendant's confession by presenting evidence independent of the confession that reasonably tends to prove that *the defendant* was the person who caused the victim's death.

**B.**

As stated above, Abdullah argues that the state did not satisfy its obligation under section 634.03. We apply a *de novo* standard of review to the question whether the state has presented evidence independent of a defendant's confession that reasonably tends to prove that the specific crime charged in the complaint actually occurred. *Holl*, 966 N.W.2d at 814.

Abdullah repeatedly states in his brief that the state did not present evidence independent of his confession that reasonably tends to prove "that *he* shot his father and sister." (Emphasis added.) He asserts that there is neither direct evidence nor circumstantial evidence that he did so. He summarizes his argument by stating, "In short, the circumstantial evidence shows that *someone* shot Mr. Abdullah's father and sister, not that *Mr. Abdullah* shot them." (Emphasis added.)

Abdullah misapprehends the applicable law. As stated above, section 634.03 requires the state to present evidence independent of the defendant's confession that reasonably tends to prove the *corpus delicti* of the charged offense. *See Holl*, 966 N.W.2d

8

at 814; *Hill*, 2024 WL 3490357, at *4-5. If the defendant is charged with homicide, the state must present evidence independent of the defendant's confession that reasonably tends to prove that *someone* caused the death of another person in a criminal manner, but the state is *not* required to present evidence independent of the defendant's confession that reasonably tends to prove that *the defendant* was the person who did so. *See Voges*, 266 N.W. at 266; *Laliyer*, 4 Minn. at 377-78, 4 Gil. at 284-85. In effect, Abdullah has conceded that the state presented the independent evidence necessary to satisfy section 634.03.

Our analysis of the state's independent evidence confirms that it reasonably tends to prove that someone caused the death of two persons in a criminal manner. When the first police officer arrived at Marchone's and Crystal's home, he saw two persons in the living room with fatal gunshot wounds to their heads. Police officers also found a semi-automatic handgun and four spent cartridge casings nearby. Forensic testing showed that the handgun had fired all four of the cartridge casings. The medical examiner who performed the autopsies determined that each victim's cause of death was one or more gunshot wounds to the head, that Marchone had three gunshot wounds from a gun that was fired from a distance of between a few inches to a few feet, and that Crystal had one gunshot wound from a gun that was fired from an undetermined distance. The medical examiner also determined that the "manner of death," for public-health purposes, was that "one individual caused an injury to another individual that resulted in death." There is no evidence in the record to suggest that Marchone and Crystal shot themselves or that they were shot by accident. *See Grear*, 13 N.W. at 140-41.

Thus, the state's evidence that is independent of Abdullah's confession reasonably tends to prove that someone caused the deaths of Marchone and Crystal in a criminal manner.

## DECISION

The state presented evidence independent of Abdullah's confession that reasonably tends to prove that the specific crime charged in the complaint actually occurred, as required by Minnesota Statutes section 634.03.

**Affirmed.**