STATE v. ROBERT NORMAN HALL.

176 N. W. (2d) 254.

April 3, 1970—No. 41461.

*C. Paul Jones,* State Public Defender, *Rosalie E. Wahl,* Assistant State Public Defender, and *Robert F. Collins,* for appellant.

*Douglas M. Head,* Attorney General, *J. Jerome Kluck,* County Attorney, and *Jack A. Mitchell,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.*

This is an appeal from a judgment of the district court adjudging defendant, Robert Norman Hall, guilty of the crime of burglary in violation of Minn. St. 609.58, subd. 2(3), and from an order denying his motion for judgment n. o. v. or a new trial.

On Sunday, September 17, 1967, Harold Leonard, president and manager of Fury Motors, Inc., South St. Paul, went to the office to do some last-minute preparation for the showing of new model cars the next day. At approximately 9:30 p. m., he left his office in the showroom area and went into the service area to get a bottle of soda pop from the vending machine. Leonard testified that an overhead fluorescent light is left on in the service area and was on at the time he entered the area. As he passed in front of the door which leads to the basement stairway, he saw a man about 4 to 6 feet away looking in at him. He stared at the man for 3 to 5 seconds and then "hollered." The man turned and ran down the stairs. Leonard returned to his office and telephoned the police. While he was on the phone, he heard one of the overhead basement doors being opened or closed.

Police Officers Clifford Traxler and Kenneth Roberts arrived within a few minutes and Leonard gave them a description of the intruder. He described the man as about 25 years old, dark-haired, tall, and thin, and said he was wearing a light shirt or jacket and dark pants. While searching the building, the officers discovered one of the overhead basement doors open and several paint cans in the vicinity of the door. The officers found nothing to indicate that the intruder had broken or forced his way into

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

the building. Officers Traxler and Roberts returned to their patrol car and began a search of the surrounding area. As they were traveling south on Concord Street, they saw defendant walking *toward* Fury Motors. Defendant looked at his watch several times and appeared to be in a hurry. Because he fit the general description given by Leonard, especially as to the clothes he was wearing, the officers called him over to the patrol car. In answer to their questions, defendant stated that his name was Robert Hall and that he was going to a bingo game in West St. Paul. Officer Traxler asked if he would get into the car. When he did, they drove to Fury Motors where Leonard identified defendant as the man he saw. Defendant was immediately placed under arrest and given a Miranda warning.

At 10 p. m., in the detective room of the South St. Paul police station, Leonard *again identified defendant* as the intruder. At 10:15 p. m., after Leonard had returned to his office, he received an anonymous telephone call. The caller asked if that were the place that had been burglarized and if the police were still there. When given affirmative answers, the caller said, "Tell those coppers they better keep working because I will have that safe cracked within a week." That same night the police discovered a man asleep in a car parked near Fury Motors. In the trunk of the car were a number of tools.

In a search of Fury Motors, Officer John Gutzman discovered a footprint on the top of one of the paint cans which were stacked in the basement. At the station Officer Gutzman asked to see the soles of defendant's shoes. There was a 3/4-inch cut in the sole of the right shoe. The cut in the shoe seemed to match the footprint found on the paint can. Officer Leonard Bursott "took" defendant's shoes from him. They were sent to the State Crime Laboratory where an analyst, Milton Flohr, after examination concluded that defendant's right shoe had made the impression found on the paint can.

The building in question is two stories high with a basement. Fury Motors leases the first floor and most of the basement from

the owner, Fox Brothers, Inc. The Minnesota Highway Department leases the remainder of the basement. Another tenant and Fox Brothers occupy the second floor. The passageway in which Leonard saw the intruder is common to all tenants and each has a right to use it, at least during business hours.

Defendant was charged by information with burglarizing Fury Motors, Inc., tried by a jury, and convicted. He raises four issues on this appeal. He contends: First, the failure of the state to give notice of its intent to introduce his shoes in evidence renders that evidence inadmissible as well as the photographs of the soles thereof, photographs of the footprint found on the paint can, and the expert's opinion with reference thereto, under State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. (2d) 3. Second, the evidence is insufficient to support his conviction. Third, it was error to admit in evidence the items specified in the first issue because the state failed to show when the print had been made. Fourth, the information was fatally defective.

■ State ex rel. Rasmussen v. Tahash, *supra,* provides that a pretrial hearing shall be held to determine whether evidence which was obtained as the result of a search and seizure, evidence which was discovered because of a confession or statements in the nature of a confession obtained from the defendant, and confessions or statements in the nature of confessions, were obtained in violation of defendant's constitutional rights. It is the duty of the state to give notice to the court of its intent to use any of the above-mentioned types of evidence. This the state failed to do in the instant case. Where evidence is obtained as a result of a search and seizure and the state fails to give notice of its intent to use such evidence, the court may infer that the evidence was obtained in violation of defendant's constitutional rights.

The defendant twice requested that the state give notice—once orally and once in writing. At trial defendant objected to the in-

troduction of the shoes on the ground the state had failed to give notice.[1]

The state contends that the taking of defendant's shoes was not a search or seizure *within the meaning of the Rasmussen case*. The "taking" ordinarily is denominated a "search and seizure" or a "seizure" whether it is found to have been "reasonable" or "unreasonable"; to have been done with consent; or that the article taken was in plain sight.[2]

Even if, as the state contends, defendant consented to the search, a fact issue was raised which required determination by the judge in a Rasmussen hearing. This court has recognized that when consent is claimed, the prosecutor has the burden of showing it was free and voluntary and was not given in acquiescence to a claim of lawful authority. Defendant was under arrest and in the police station when he allowed the police to see the soles of his shoes and when the shoes were taken. It is doubtful that, if defendant had refused to comply with the officer's requests, the police would have refrained from acting. State v. Mitchell, 285 Minn. 153, 172 N. W. (2d) 66. In that event, his consent would not be free and voluntary.

The state contends that the plain-sight cases govern: State v. Kotka, 277 Minn. 331, 152 N. W. (2d) 445, certiorari denied,

[1] This fact distinguishes this case from State v. Fields, 279 Minn. 374, 157 N. W. (2d) 61; and State v. Doust, 285 Minn. 336, 173 N. W. (2d) 337, where it was held that defendant's failure to move for an extension of time constituted a waiver of his right to timely notice.

[2] United States v. Caruso (2 Cir.) 358 F. (2d) 184; Commonwealth of Pennsylvania ex rel. Whiting v. Cavell (D. Pa.) 244 F. Supp. 560; United States v. Margeson (D. Maine) 246 F. Supp. 219, affirmed (1 Cir.) 361 F. (2d) 327 (heel mark); State v. Raymond, 258 Iowa 1339, 142 N. W. (2d) 444 (full horseshoe heel plate on right shoe); Davis v. State, 236 Md. 389, 204 A. (2d) 76; People v. Shaw, 237 Cal. App. (2d) 606, 47 Cal. Rptr. 96; State v. Mark, 46 N. J. 262, 216 A. (2d) 377; State v. Dill, 277 Minn. 40, 151 N. W. (2d) 413; and State v. Dillon, 279 Minn. 105, 155 N. W. (2d) 453. Margeson and Raymond both involved the taking of defendant's shoes after his arrest in order to compare them with footprints found at the scene of the crime.

389 U. S. 1056, 88 S. Ct. 806, 19 L. ed. (2d) 853; State v. Clifford, 273 Minn. 249, 141 N. W. (2d) 124; and State v. Huffstutler, 269 Minn. 153, 130 N. W. (2d) 347. These cases relate to whether a search and seizure were reasonable or consented to and do not hold that there was no search and seizure at all. See, State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815. It would be appropriate for the state to cite these cases to support its position during a Rasmussen hearing. They are not authority for the proposition that no Rasmussen hearing must be held where the evidence seized is in plain sight. In this case, the 3/4-inch cut was on the sole of defendant's shoe. The police had to ask to see the soles of the shoes. There was a fact issue as to whether the evidence was in plain sight. Whenever there is doubt concerning the nature of the "taking," a hearing should be held.[3] We hold that the failure to hold such a hearing under the circumstances disclosed by the record violated defendant's constitutional rights.

■ The evidence in this case is weak in a number of important respects. There are a number of factors which are inconsistent with a finding of guilt: Defendant when arrested was walking *toward* Fury Motors; soon after defendant was arrested, Leonard received an anonymous telephone call from one who knew about the burglary and who claimed he would succeed next time; there was no evidence of a break-in, that is, no windows or doors were broken, no locks forced or picked; and, finally, the intruder was seen in a passageway common to all the tenants of

---

[3] This court concluded in State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 556, 141 N. W. (2d) 3, 14: "The procedure which we have outlined deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confessions on the part of the defendant. However, the steps which have been suggested as a method of dealing with evidence of this type will indicate to counsel and to the trial courts that the pretrial consideration of other evidentiary problems, the resolution of which is needed to assure the integrity of the trial when conducted, will be most useful and that this court encourages the use of such procedures wherever practical."

the building and thus a place in which a number of persons might lawfully be found. The state would not have met its burden of proving that defendant entered the premises with an intent to commit a crime as required by Minn. St. 609.58, subd. 2(3), had the evidence in question been excluded.

We have recognized that in burglary cases it is not necessary that anything be taken for the state to meet its burden of proof that defendant *intended to steal* or commit a crime on the premises. State v. Witte, 280 Minn. 116, 158 N. W. (2d) 266; State v. Dillon, 279 Minn. 105, 155 N. W. (2d) 453; State v. Crosby, 277 Minn. 22, 151 N. W. (2d) 297. However, each of these cases differs in a number of respects from the instant case. In the cited cases, the breaking and entering occurred very late at night, there was forcible entry, and there were signs of search for something valuable. These factors, together with strong direct evidence of unauthorized entry by the accused, permitted the inference that the defendants *entered with intent to commit a crime.*

In this case, the entry occurred in the middle of the evening, 9:30 p. m., with no forcible entry or sign of a search for valuables; the part of the building where the intruder was seen was a common passageway; the footprint evidence should not have been admitted because the state failed to give notice and a hearing was not conducted; and Leonard's in-court identification of defendant as the intruder is colored by the fact that before trial defendant was seen *twice* by Leonard but at neither time was defendant afforded safeguards discussed in United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149, and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. (2d) 1178.

No lawyer was provided, nor was defendant given the opportunity to obtain one, prior to either identification by Leonard. In Wade and Gilbert, the defendants were shown to the witnesses in a lineup, but here the defendant was alone in the custody of the police on both occasions when he was exhibited to Leonard.

The possibility that the power of suggestion played an important part in the identification cannot be overlooked, especially in view of the fact that Leonard claimed the intruder was wearing "dark pants" when he saw him in the passageway and yet Leonard admitted that because the window in the door was waist-high he could not see the intruder's pants. It seems possible, if not likely, that once he saw defendant with the police Leonard assumed defendant was the intruder. A proper lineup, at least for the second view, could have removed doubt.

There is such a totality of infirmities as disclosed by the record as to require an appropriate Rasmussen hearing and a new trial.

However, because on retrial the defendant may raise the issues of whether the footprint found on the paint can is admissible and whether the information is defective, we will consider them here.

■ The question as to the admissibility of footprints has arisen many times in other jurisdictions. See, Annotation, 35 A. L. R. (2d) 856, and A. L. R. (2d) Later Case Service. But this question has never been passed on by this court.

Wigmore in his treatise on the law of evidence concludes that fingerprints, footprints, and other tracings which are used to identify or connect a defendant with the scene of the crime are admissible if the tracings have sufficient individual characteristics so that a comparison is reliable. 2 Wigmore, Evidence (3 ed.) §§ 412, 414, 415.

The expert in this case testified that it was impossible to determine when the print had been made. Other courts have held that absent a showing of when the print was made, evidence showing it to be defendant's, or evidence that the print has similar identifying characteristics, the print is not admissible. State v. Sigman, 220 Iowa 146, 261 N. W. 538; Giacone v. State, 124 Tex. Cr. 141, 62 S. W. (2d) 986. Wigmore recognizes that the time the mark was made is one of the most difficult problems in using tracings to connect defendant with the crime. 1 Wigmore, Evidence (3 ed.) § 149.

Sigman and Giacone are distinguishable from this case. In both of those cases there was direct evidence that defendant had been in the burglarized building prior to the burglary. Here, there was nothing to indicate defendant had been in Fury Motors before. In neither of those cases did the footprint found have any distinctive characteristic as the one here did. The only thing that could be determined from those prints was that defendant wore the same size and type of shoe. Also, in neither of those cases did an expert make the comparison. In this case, a qualified expert, Milton Flohr, made the examination of defendant's shoes and of the footprint. He determined that the defendant's shoe had made the print. The cut on the shoe made it distinctive enough so that the comparison is reliable. Assuming the district court finds that defendant's shoes were not taken in violation of any of his constitutional rights, the shoes, the photographs of the print found on the paint can, the impressions of defendant's right shoe, and the expert's opinion that defendant's right shoe made the print found on the paint can are admissible.

■ The information under which defendant was charged reads as follows:

"* * * [D]efendant, did wilfully, wrongfully, unlawfully, feloniously in the nighttime, enter a certain building, to-wit: the Fury Motors, Inc., a more particular description being to the complainant unknown, which building was then and there owned by and the property of one Fury Motors, Inc., of the county and state aforesaid, and who was then and there in the lawful possession of said building and without the consent of said Fury Motors, Inc., with the intent then and there entertained by said defendant to commit a crime in said building, to-wit, the crime of theft."

Defendant contends that this information is fatally defective because (1) it fails to state what type of building it is, (2) it incorrectly lists the owner of the building, and (3) it does not give the location of the building.

434

In State ex rel. Webber v. Tahash, 277 Minn. 302, 309, 152 N. W. (2d) 497, 502, this court stated:

"* * * An information alleging burglary which fails to set out the type of building involved, its ownership, or its location is fatally defective and will not confer jurisdiction on the district court."

In that case the information that was held fatally defective charged defendant with unlawful entry into "a building commonly known and described as a shed." This is clearly inadequate. The purpose of an information is to specify the charge and at the same time to prevent defendant from being charged twice with the same crime.

As to defendant's first ground, it is not necessary that the information state that the building is of a type "suitable for affording shelter for human beings." State v. Gerou, 283 Minn. 298, 168 N. W. (2d) 15. For a burglary conviction to be sustained, the structure must be "suitable for affording shelter for human beings." Minn. St. 609.58, subd. 1(2). But if the evidence established, as it does here, that the structure conforms to the definition in the statute, that is sufficient. The failure of the information to describe the type of building does not render it fatally defective.

It is also not necessary that the information state the correct ownership so long as the one alleged to be the owner had actual or constructive possession of the property. Minn. St. 628.28 states the rule as follows:

"In the prosecution of any offense committed upon, * * * real estate, * * * it shall be sufficient, and shall not be deemed a variance, if it shall be proved on trial that, at the time when such offense was committed, either the actual or constructive possession, * * * in the whole *or any part* of such real * * * estate,

was in the person * * * alleged in the indictment or other accusation to be the owner thereof." [4] (Italics supplied.)

In this case Fury Motors was alleged to be the owner of the property but at trial it was established that Fury Motors leased part of the building. It thus was in "possession" of that part of the building which it occupied. This is sufficient under the statute.

Finally, the information in this case did not allege the location of the building. This does not make the information fatally defective. State ex rel. Webber v. Tahash, *supra,* held that ownership, location, or type of building must be alleged and here the ownership (possession) was sufficiently alleged under the statute. Therefore, one of the three required elements is present. In State v. Britt, 279 Minn. 260, 156 N. W. (2d) 261, this court recognized that while an information may be imperfect in form it is not fatally defective if it adequately apprises the defendant of the charge on which he is being held and upon which he will be tried. This court upheld informations similar to the one in this case in State v. Golden, 86 Minn. 206, 90 N. W. 398 (an information charging defendant with breaking and entering "the warehouse of Halvorson-Richards Co."), and in State v. Olson, 270 Minn. 329, 133 N. W. (2d) 489 (an information charging defendant with burglarizing "a building commonly known as Thompson's Body Shop"). Although the information in this case was imperfect, it was not fatally defective.

Reversed and remanded for a Rasmussen hearing and a new trial.

---

[4] While Minn. St. 628.28 refers to indictments, § 628.30 provides that all provisions relating to indictments shall govern a prosecution by information.