**STATE of Minnesota, Respondent,**

v.

**Marshall Edward INGOLD, Appellant.**

**No. C5–89–510.**

Court of Appeals of Minnesota.

Jan. 16, 1990.

Review Denied March 8, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin County Atty., and Lee W. Barry, Sr. Atty., Appellate Section, Minneapolis, for respondent.

C. Paul Jones, State Public Defender and Susan Andrews, Asst. Public Defender, St. Paul, for appellant.

Heard, considered and decided by FOLEY, P.J., and KALITOWSKI and STONE *, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Marshall E. Ingold appeals from his conviction of third degree burgla-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ry. Ingold raises two issues. First, whether incriminating statements made by him while in jail were obtained in violation of his fifth and sixth amendment rights. Second, whether the trial court abused its discretion in allowing expert testimony on shoe print identification.

## FACTS

In the early morning of August 13, 1988, an intruder broke into the Market Bar–B–Que in Minnetonka by prying open the back door. A silent alarm was activated notifying the police of the break-in.

Several police officers were at the scene within minutes. Ingold was arrested approximately one block away and was charged with third degree burglary.

The officers found a shoe print on the outside of the back door to the Market Bar–B–Que. This print was lifted and compared with Ingold's shoe. Donald Melander from the Hennepin County crime lab testified at trial that he compared the two prints by acetate overlay and concluded that Ingold's right shoe made the print on the Market Bar–B–Que door.

Ingold was in custody and an attorney was appointed for him at his arraignment. After Ingold's arraignment, Deputy David Moden escorted him back to the holding area of the courtroom. Upon returning to the holding area, Ingold commented to a group of several inmates in the holding area that the state really didn't have a case against him. He claimed he was only picked up a few blocks from the burglary because he had a prior record. Deputy Moden replied, "they must have something more than that." At this point, Ingold stated, "Well, they say they had my foot print on the back door of the Market Bar–B–Que, but why would I try to kick a door in when it opened out?" Deputy Moden testified at the omnibus hearing that he was not trying to elicit information from Ingold but was merely making a statement.

Ingold testified at trial and denied breaking into the Market Bar–B–Que.

After three days of trial, the jury found Ingold guilty of burglary in the third degree.

## ISSUES

1. Did the admission at trial of incriminating statements made by Ingold to Deputy Moden violate Ingold's fifth or sixth amendment rights?

2. Did the trial court abuse its discretion by permitting the state's expert to testify on shoe print identification?

## ANALYSIS

1. Violation of constitutional rights.

Ingold alleges that Deputy Moden violated his fifth amendment rights by interrogating him while he was in custody without first giving him a *Miranda* warning. Ingold also alleges that Deputy Moden violated his sixth amendment rights by deliberately eliciting information from him in the absence or waiver of counsel. Ingold argues that, therefore, the trial court erred in allowing Deputy Moden to testify about the statement and his conviction should be reversed.

a. <u>Fifth amendment rights.</u>

■ Any incriminating statements made by an accused during custodial interrogation may not be used by the state in its case in chief unless the accused is advised of his rights and voluntarily waives them. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Ingold was clearly in custody and had not received a *Miranda* warning by Deputy Moden before making his incriminating statement. We must, therefore, determine whether Ingold's statement was a result of interrogation by Deputy Moden or whether it was voluntary. *See United States v. Criswell*, 696 F.2d 636, 638 (8th Cir.1983).

[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this

definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

■ An appellate court should apply the totality-of-the-circumstances test to the facts found by the trial court to determine the voluntariness of a defendant's statements. *State v. Jackson,* 351 N.W.2d 352, 355 (Minn.1984).

*Jackson* involved a conversation between a jail house deputy and the defendant. Jackson was watching television in the prison day room when the deputy told him to change the channel to a news program. As they watched the television account of murder allegations in an unrelated case, Jackson commented "you know they should bring back the death penalty for things like that." The deputy responded that if they did and Jackson was found guilty, he could be executed. Jackson replied "I know." The deputy then said, "You are the only one who knows who did it or not anyway." Jackson, in turn, responded, "I'm not the only one who knows, so does my psych and the prosecution's psych * * *. I know that I did it and I'm willing to take what is coming to me." The deputy looked surprised and Jackson said, "Don't stare at me like that, you know I did it and so does everyone else." *Jackson,* 351 N.W.2d at 355. The deputy testified at the omnibus hearing that he did not intend to elicit an incriminating response from Jackson and that he was only making a comment. *Id.* at 355.

The Supreme Court applied the totality-of-the-circumstances test in *Jackson.* It found that the deputy was "not required to interrupt Jackson's spontaneous and volunteered statements to warn him of his rights under the fifth amendment." *Id.* at 356.

■ Applying the totality-of-the-circumstances test in light of *Jackson,* Deputy Moden's statement to Ingold does not amount to interrogation. He was simply responding to Ingold's statement that the police only picked him up because of his prior record. Ingold's incriminating state-ment about his knowledge of the way the Market Bar–B–Que's door opened was voluntary. Ingold's fifth amendment right was not violated.

b. Sixth amendment rights.

Ingold also claims that his sixth amendment right to counsel was violated when Deputy Moden questioned him in the absence of counsel after his right to counsel had attached.

■ A defendant's sixth amendment right to counsel attaches upon initiation of adversary judicial criminal proceedings. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *see also Giddings v. State,* 290 N.W.2d 595 (Minn.1980). Once the right attaches, any incriminating statements made by the defendant which are deliberately elicited by the police may not be used against the defendant at trial. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

In determining whether Deputy Moden deliberately elicited the incriminating information from Ingold, the court should look to the intent of Deputy Moden. *See Jackson,* 351 N.W.2d at 355.

■ Ingold's right to counsel had attached at the time he made the incriminating statement. However, we find that Deputy Moden's spontaneous comment to Ingold in the holding area does not amount to deliberate elicitation. The facts in this case are similar to those in *Jackson.* Therefore, following *Jackson,* we hold that the "impromptu conversation" between Ingold and Deputy Moden which produced the incriminating remarks did not violate Ingold's sixth amendment rights to the assistance of counsel. *See Jackson,* 351 N.W.2d at 356.

Since Deputy Moden did not violate either Ingold's fifth or sixth amendment rights, the trial court did not err in allowing Ingold's incriminating statement in evidence.

**2. Shoe print expert's testimony.**

Ingold argues that the trial court's allowance of Donald Melander to testify as an expert regarding shoe print identification was an apparent error.

■ While the admission of expert testimony rests within the discretion of the trial court, that decision will be reversed upon a showing of "apparent error." *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984).

Under the rules of evidence, expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue * * *." Minn.R. Evid. 702. The basic requirement of this rule is the "helpfulness requirement." *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980).

■ At trial, Melander testified that he reached his conclusion that Ingold's right shoe made the shoe print on the back door of the restaurant by placing an acetate overlay of the shoe print on top of an ink print of Ingold's right shoe. He then looked for similarities in size, shape and wear pattern. Melander testified that while it would not be impossible for jury members to do a comparison themselves, they would need the experience in the method of comparison as well as special lighting conditions.

■ We find Melander's testimony to meet the helpfulness requirement. Expert testimony on whether a defendant's shoe made a print found at a crime scene is admissible. *State v. Hall*, 286 Minn. 424, 433, 176 N.W.2d 254, 260 (Minn.1970).

The trial court did not abuse its discretion in allowing expert testimony on Ingold's shoe print identification.

## DECISION

The admission at trial of incriminating statements made by Ingold to Deputy Moden while in custody did not, under the totality-of-the-circumstances test, violate either appellant's fifth or sixth amendment rights.

The trial court did not abuse its discretion by permitting the state's expert to testify on shoe print identification.

Affirmed.

STONE, J., dissents with opinion.

BRUCE C. STONE, Acting Judge (dissenting).

I respectfully dissent.

At Ingold's arraignment on a charge of burglary in the third degree, an attorney was appointed to represent him. Thereafter, he was escorted back to the holding area by a deputy sheriff. The area was occupied by several other inmates.

Ingold commented to the group that they did not really have a case against him and that he was only picked up a few blocks from the burglary because he had a prior record.

The deputy then inserted himself into the conversation and said, "They must have something more than that." At this point, Ingold stated, "Well, they say they had my footprint on the back door of the Market Bar–B–Que, but why would I try to kick a door in when it opened out?" This statement could be regarded as incriminating.

I do not contend that it was necessary that Ingold be given the *Miranda* warning (right to counsel, right to remain silent, etc.). This was not an interrogation and hence the V Amendment protection against self-incrimination does not apply. Rather, this is a VI Amendment violation.

I am not aware of higher court precedent in exact point. The majority opinion cites authorities that are persuasive but not necessarily determinative under the facts here presented. While I concur the deputy's comment did not amount to deliberate elicitation under *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the words and actions of the deputy were such that he should have known were "reasonably likely to elicit an incriminating response." *See Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980).

The VI Amendment guarantees the accused, at least after the initiation of formal

charges, the right to rely on counsel as a "medium" between him and the state. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985).

To me, there is a vast difference between V and VI Amendment constitutional protections. In the former, law enforcement officers are gathering evidence, often under hazardous circumstances, when the crime is recent and the pursuit fresh. Exacting formalities should not be required by judicial intervention into what higher authority has referred to as the "highly competitive business of ferretting out crime."

Ingold's VI Amendment right to have the assistance of counsel for his defense rests on quite another foundation. Here, the complaint had been issued already. The prosecution had a prima facie case (or at least should have had) and, apart from the development of scientific evidence or the location of then unknown witnesses, its investigation was complete. Appellant had entered the protective walls of the courtroom and counsel had been appointed to assist him in his defense. Yet within minutes the deputy had declared to appellant that the prosecution must have more evidence than just defendant's presence near the scene and a prior record. This observation, however innocently made, could scarcely fail to provoke a response in the absence of the attorney who had just been appointed.

While the "totality of the circumstances" test, *State v. Jackson*, 351 N.W.2d 352 (1984), might reasonably convince others to the contrary, for my part I feel compelled to conclude it was error for the prosecutor to introduce, and for the trial court to receive, the uncounseled statement into evidence. Admittedly, the issue is close; as such, I would adopt the theory of *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986): "It is the State that has the burden of establishing a valid waiver" and "doubts must be resolved in favor of protecting the constitutional claim."

I would remand this case for a new trial, to be held without use of the statement.