STATE OF MINNESOTA

IN SUPREME COURT

A23-0560

Court of Appeals                                                                              Gaïtas, J.

State of Minnesota,

               Appellant,

vs.                                                                                      Filed: July 23, 2025
                                                                                  Office of Appellate Courts

Nicholas Lee Hill,

               Respondent.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Adam E. Petras, Assistant County Attorneys, Minneapolis, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant State Public Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

1.     The corpus delicti statute, Minn. Stat. § 634.03 (2024), which bars a conviction based solely on a confession, is satisfied for both completed offenses and attempt offenses when there is independent evidence that reasonably tends to prove the defendant committed the charged offense.

2.     Respondent's conviction for attempted first-degree criminal sexual conduct does not violate the corpus delicti statute, Minn. Stat. § 634.03, because the State's

1

evidence independent of respondent's confession reasonably tends to show that respondent committed the offense.

Reversed and remanded.

O P I N I O N

GAÏTAS, Justice.

In this attempted first-degree criminal sexual conduct case, we consider the operation of the corpus delicti statute, Minn. Stat. § 634.03 (2024), which provides that a defendant cannot be convicted of a crime based solely on the defendant's confession to the crime. After isolating and physically attacking a woman, respondent Nicholas Lee Hill confessed that he had been planning to rape her during the encounter. Appellant State of Minnesota charged Hill with attempted first-degree criminal sexual conduct, and the district court found Hill guilty and sentenced him to prison. The court of appeals reversed Hill's conviction, concluding that for attempt crimes, the corpus delicti statute requires independent evidence of both a defendant's intent and a substantial step toward commission of the underlying offense, and that because Hill's confession was the only evidence that he intended to sexually penetrate the victim, Hill's conviction violated the corpus delicti statute. We granted the State's petition for review. We confirm that the standard we articulated in *State v. Holl*, 966 N.W.2d 803, 814 (Minn. 2021)—which requires independent evidence "that reasonably tends to prove" the defendant committed the charged offense—applies to both completed crimes and attempt crimes. And because we conclude that independent evidence reasonably tends to prove that Hill committed the offense of attempted first-degree criminal sexual conduct, thus satisfying the corpus delicti

2

statute, we reverse the decision of the court of appeals and remand to that court to consider the remaining arguments that Hill raised on appeal.

## FACTS

The incident at issue here occurred at a subsidized senior living apartment building in Minneapolis on May 11, 2020. Hill entered the lobby at around noon and asked a building employee, M.K., for a rent application. M.K. recognized Hill, who had visited the apartment building multiple times before and had requested a rent application each time. Later, M.K. testified that during each of these previous encounters with Hill, she had felt uneasy.

C.L., who worked as a manager at the building, intervened and told M.K. that she would handle Hill's request. C.L. asked Hill to wait in the lobby while she retrieved an application. When she returned to the lobby moments later, she saw Hill walking unaccompanied down a hallway. After C.L. instructed Hill to return to the lobby, he asked to see a vacant apartment. C.L. took Hill to see an empty unit near the lobby.

When they entered the apartment, Hill stood near the bathroom, and he asked C.L. about the bathroom. C.L. later testified that she believed Hill wanted to get her into the bathroom because he could have disabled her more easily there. Rather than entering the bathroom, C.L. pointed out a closet to Hill. Suddenly, Hill pushed C.L. into the closet, causing her to fall to the floor. Hill then leaned over C.L. and choked her with both of his hands. C.L. screamed for help, pounded on the closet wall, and tried to scratch Hill's face.

M.K. heard C.L. screaming, called 911, and began kicking the door to the apartment, which was locked. C.L. later testified that she did not lock the door when she entered the apartment with Hill.

As Hill continued to choke C.L., she said, "You need to stop." Hill's face "went blank," and he stopped choking C.L. Both Hill and C.L. got up. Hill then pulled out a knife, first pointing the blade toward C.L. but then turning it around as if to hand it to her. C.L. took the knife. Hill then left the apartment, repeatedly saying, "I'm sorry."

M.K. and C.L. escorted Hill out of the apartment building. C.L. estimated that the incident in the vacant apartment lasted "less than five minutes." During that time, Hill did not touch C.L.'s intimate parts, attempt to undress her or himself, or make any sexual comments. C.L. later testified that Hill did not have an opportunity to touch her intimate parts or to do anything sexual because she was fighting back. After the incident, C.L.'s neck was red and bruised, and she experienced pain in her neck and body.

Police arrested Hill two days later. Following a *Miranda* warning, two police investigators asked Hill what happened on the day of the assault. Hill responded, "[F]or some reason my dick got really hard." He admitted to assaulting C.L. in the closet of the vacant unit and told the investigators that he "thought about raping her" but "didn't follow through." Hill stated, "I stopped. I thought I was supposed to do it, but the way she was acting didn't seem correct, so I stopped and walked out." The investigators asked Hill about his purpose for going to the apartment building—whether he was "looking at the apartment or . . . planning to rape" C.L. Hill replied, "Um I was like thinking

4

about . . . [r]aping her." An investigator asked why Hill "[did] all that." Hill replied, "'Cause I was thinking about sex."

The State charged Hill with one count of attempted first-degree criminal sexual conduct while armed with a dangerous weapon. Minn. Stat. § 609.17, subd. 1 (2018); Minn. Stat. § 609.342, subd. 1(d) (2018).[1] Later, the State amended the complaint, adding a second count: attempted first-degree criminal sexual conduct causing personal injury using force or coercion to accomplish the act. Minn. Stat. § 609.17, subd. 1; Minn. Stat. § 609.342, subd. 1(e)(i) (Supp. 2019).

Hill moved to suppress his confession, arguing that the police violated his constitutional rights by questioning him. The district court denied the motion, concluding that Hill had waived his *Miranda* rights and that the confession would be admissible at Hill's trial.

Hill then waived his right to counsel and chose to represent himself. Following the discharge of his counsel, Hill asked the district court to reconsider its order denying the motion to suppress Hill's confession. The district court permitted Hill to present evidence concerning the voluntariness of the confession. After an evidentiary hearing, the district court denied Hill's motion for reconsideration. The district court determined that Hill

---

[1]     We cite here to the versions of the criminal statutes that were in effect at the time the act occurred. The corpus delicti statute has remained unaltered.

"knew and understood his *Miranda* rights," and that Hill "was neither confused nor delusional about where he was" and why the police were questioning him.[2]

Hill waived his right to a jury trial and agreed to have a court trial. Because Hill asserted a mental illness defense, the district court bifurcated the trial into two phases, a guilt phase and a mental illness phase.[3]

During the State's case-in-chief, M.K., C.L., and two police officers testified, and the prosecutor introduced 11 exhibits, including Hill's confession.[4] Hill presented no evidence.

The district court found Hill guilty of attempted first-degree criminal sexual conduct causing personal injury using force or coercion. It relied in part on Hill's confession as evidence of Hill's intent to engage in sexual penetration with C.L. and Hill's substantial

---

[2]    Hill does not challenge the district court's denial of his motion to suppress his statement before this court.

[3]    Under Minnesota Rule of Criminal Procedure 20.02, subdivision 7, when a defendant relies on both a not guilty defense and a mental illness defense, the district court "must separate the two defenses," considering the not guilty defense first and the mental illness defense second.

[4]    The State also moved to introduce evidence of Hill's prior conviction for first-degree criminal sexual conduct under Minnesota Rule of Evidence 404(b) as evidence of Hill's intent. *See also State v. Spreigl*, 139 N.W.2d 167, 169–173 (Minn. 1965) (allowing evidence of other criminal acts for specific purposes). The district court denied the State's motion, determining that the danger of unfair prejudice substantially outweighed the probative value of the evidence.

steps toward commission of the offense.[5]  The district court found Hill not guilty of attempted first-degree criminal sexual conduct while armed with a dangerous weapon.

As to Hill's mental illness defense, the district court concluded that, although Hill had a history of mental illness, he did not meet the requirements of the mental illness defense because he understood the wrongful nature of his actions.[6]  *See* Minn. Stat. § 611.026 (2024) ("No person having a mental illness or cognitive impairment so as to be incapable of understanding the proceedings or making a defense shall be tried, sentenced, or punished for any crime; but the person shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act the person was laboring under such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong.").  The district court found that Hill recounted the sexual assault to police, stated that he planned to rape C.L., and acknowledged that rape is wrong.

At sentencing, the district court sentenced Hill to 180 months in prison.

Hill appealed his conviction,[7] arguing, among other things, that his conviction violated the corpus delicti statute because, beyond his confession, the State failed to present evidence that reasonably tends to prove that he committed attempted first-degree criminal sexual conduct.  *State v. Hill*, 10 N.W.3d 317, 320 (Minn. App. 2024).  The court of appeals

---

[5]    Under Minnesota Statutes section 609.17, subdivision 1, "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime."

[6]    The district court's rejection of Hill's mental illness defense is not before us in this appeal.

[7]    Hill has been represented by counsel throughout his appeal.

agreed and reversed Hill's conviction. *Id.* at 327–28. One judge dissented, determining that the State's evidence satisfied the corpus delicti statute. *Id.* at 330–31 (Reyes, J., dissenting).

We granted the State's petition for review.

## ANALYSIS

In this case, we are asked to address what Minnesota's corpus delicti statute requires when a defendant, following a confession, is charged with an attempted criminal sexual conduct offense. The court of appeals held that in all cases involving an attempt crime to which the defendant confessed, the corpus delicti statute requires the State to present evidence independent of the confession that reasonably tends to prove the defendant's intent to commit the underlying crime and the defendant's substantial step toward the commission of that crime. *Hill*, 10 N.W.3d at 324–25.

According to the State, the court of appeals' rule is too demanding. The State points out that we have previously held the corpus delicti statute requires independent evidence "that reasonably tends to prove that the specific crime charged in the complaint actually occurred," *State v. Holl*, 966 N.W.2d 803, 814 (Minn. 2021), and it contends that standard should apply to both completed crimes and attempt crimes. The State further argues that the independent evidence here satisfies this standard. Hill disagrees. He supports the court of appeals' approach, and he argues that the State presented no independent evidence to establish that he intended to sexually assault C.L. or took a substantial step toward committing that act.

8

To answer the questions presented here, we must first interpret the corpus delicti statute as it pertains to attempt crimes, including attempted first-degree criminal sexual conduct, and then apply our interpretation to the evidence in this case. We review both issues de novo. *See Holl*, 966 N.W.2d at 814.

I.

A.

We begin our analysis by considering the corpus delicti rule and our state statute codifying the rule. The corpus delicti rule "seeks to ensure the State has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime." *Holl*, 966 N.W.2d at 809 (citation omitted) (internal quotation marks omitted). It also "discourages coercively acquired confessions and requires that admissions and confessions from defendants are reliable." *Id.* at 808 (citation omitted) (internal quotation marks omitted). "Corpus delicti" is Latin for the "body of the crime." *Holl*, 966 N.W.2d at 809 (internal quotation marks omitted) (quoting *State v. Dern*, 362 P.3d 566, 576 (Kan. 2015) (explaining the origins of the corpus delicti doctrine)). The corpus delicti doctrine originated in English common law. *See id.* (summarizing *Perry's Case*, a 1661 English case in which John Perry was convicted for the murder of his master and executed based solely on a false confession, after which the alleged victim reappeared and explained that he had instead been kidnapped and sold into slavery); *see also Dern*, 362 P.3d at 576; David A. Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 826–27 (2003). It was first codified in Minnesota as a territorial statute in 1851. *State v. McCoy*, 963 N.W.2d 472, 484 (Minn. 2021) (citing Minn. Rev.

9

Stat. (Terr.) ch. 132, § 240 (1851) (prohibiting a conviction "without proof that the offence charged has been committed")).

The current version of Minnesota's corpus delicti statute states, in relevant part, "A confession of the defendant shall not be sufficient to warrant conviction without evidence that the offense charged has been committed . . . ." Minn. Stat. § 634.03. In *State v. Holl*, we interpreted the statute as "requir[ing] the State to present evidence independent of a confession that reasonably tends to prove that the specific crime charged in the complaint actually occurred." 966 N.W.2d at 814. We noted that the statute "does not require that each element of the offense charged be individually corroborated." *Id.* (citation omitted) (internal quotation marks omitted). Additionally, we observed that "circumstantial evidence can still be construed as sufficient independent evidence for corroboration." *Id.*

B.

To address the question presented here—what evidence is required to establish the corpus delicti for *attempted* first-degree criminal sexual conduct—we consider that specific offense.

Hill was convicted of attempted first-degree criminal sexual conduct causing personal injury using force or coercion. Minn. Stat. § 609.17, subd. 1; Minn. Stat. § 609.342, subd. 1(e)(i). To prove the *completed* offense of first-degree criminal sexual conduct under that provision, the State must establish that the defendant (1) sexually penetrated the complainant, (2) without the complainant's consent, (3) caused personal injury to the complainant, and (4) used force or coercion. Minn. Stat. § 609.342, subd. 1(e)(i); *see also* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction*

10

*Guides, Criminal*, CRIMJIG 12.03 (7th ed. 2024). An attempt offense has different elements than a completed offense. "[A]ttempt is an inchoate crime that must be connected to an uncompleted substantive crime that was attempted." *State v. Noggle*, 881 N.W.2d 545, 549 (Minn. 2016). To convict a person of an attempt, the State must prove that the person, "with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1. Thus, to establish guilt of *attempted* first-degree criminal sexual conduct under section 609.342, subdivision 1(e)(i), the State must prove that a defendant intended to sexually penetrate a nonconsenting complainant causing personal injury using force or coercion, and the defendant took a substantial step toward committing that crime.

C.

Having identified the elements of attempted first-degree criminal sexual conduct under section 609.342, subd. 1(e)(i), we now address the court of appeals' approach to determining whether there was sufficient independent evidence of this offense to satisfy section 634.03, the corpus delicti statute.

The court of appeals considered the implications of the corpus delicti statute and our prior case law, including *Holl*, for inchoate crimes such as attempt. *Hill*, 10 N.W.3d at 321. Ultimately, the court of appeals held that "if the specific crime charged in the complaint is an attempt crime, the state must present evidence independent of the confession that reasonably tends to prove . . . an intent to commit [the] underlying crime and . . . a substantial step toward the commission of the underlying crime." *Id.* at 324–25.

The court of appeals reached this conclusion by first identifying the essential elements of attempted first-degree criminal sexual conduct: (1) intent to commit first-degree criminal sexual conduct causing personal injury using force or coercion and (2) a substantial step toward the commission of that crime. *Id.* at 321–22. It then acknowledged the rule that we announced in *Holl* that the corpus delicti statute "does not require that each element of the offense charged be individually corroborated." *Id.* at 322 (citation omitted) (internal quotation marks omitted) (emphasis removed). But the court of appeals noted that the *Holl* decision does not provide further guidance about *which* elements must be corroborated. *Id.* Citing "[p]rior supreme court opinions" generally, the court of appeals stated that "the state must corroborate the elements of a crime that constitute the *corpus delicti* of the crime." *Id.* at 322–23.

The court of appeals cited *McCormick on Evidence*—a treatise that we have previously relied on—for the proposition that the corpus delicti of an offense generally consists of (1) "a particular injury or harm" and (2) "the criminal nature of the cause of the injury or harm." *Hill*, 10 N.W.3d at 323; *see* 1 Charles T. McCormick, *McCormick on Evidence* § 146 (Robert P. Mosteller ed., 8th ed. 2022). It observed that this proposition is consistent with some of our decisions addressing the corpus delicti for completed crimes. *Hill*, 10 N.W.3d at 323 (citing *State v. Laliyer*, 4 Minn. 368, 377 (1860) (stating that the corpus delicti for murder is that "the particular murder . . . has been committed by some one" and that the "death was caused by the criminal agency of another"); *State v. Grear*, 13 N.W. 140, 140–41 (Minn. 1882) (observing that the corpus delicti for assault was established where a woman was shot, there was no evidence that she shot herself or that

12

there was an accident, and there was independent evidence showing that the defendant shot the woman); *State v. Plagman*, 121 N.W.2d 621, 623 (Minn. 1963) (stating that the corpus delicti for arson was established by independent evidence that the fire "was of incendiary origin" and the defendant's subsequent confession during a court proceeding)). Relying on *McCormick on Evidence* and these decisions, the court of appeals interpreted *Holl* to require the State to "present evidence independent of the defendant's confession that reasonably tends to prove those elements of the specific crime charged . . . that constitute the *corpus delicti* of the crime." *Hill*, 10 N.W.3d at 323.

Next, the court of appeals considered how to discern the corpus delicti of attempted first-degree criminal sexual conduct. It noted that, unlike a completed crime, "an attempt [crime] typically does not result in a tangible injury or harm." *Id.* at 324. Again citing *McCormick on Evidence*, the court of appeals adopted the "gravamen" approach, which provides that the corpus delicti of an inchoate crime requires independent evidence establishing the " 'gravamen of the offense.' " *Id.* (quoting *McCormick on Evidence* § 146). The court of appeals defined the gravamen of an offense as "the material part of a criminal charge." *Id.* (citation omitted) (internal quotation marks omitted). And observing that the elements of a defendant's intent and an act constituting a substantial step toward the completed crime "are material and essential to the existence of an attempt crime," the court of appeals concluded that "[t]he *corpus delicti* of an attempt crime must encompass both elements." *Id.* ("There can be no attempt crime if there is only an intent to commit a crime but no act in furtherance of that intent. . . . And there can be no attempt crime if there is only an act, without any intent to commit a crime."). To establish the corpus delicti

13

for attempted first-degree criminal sexual conduct, the court of appeals held that the State must present evidence, independent of a defendant's confession, that reasonably tends to prove (1) the defendant's intent to commit first-degree criminal sexual conduct and (2) the defendant's act that was a substantial step toward committing the completed offense. *Id.* at 325.

Finally, applying this rule to the circumstances in Hill's case, the court of appeals concluded that the State had failed to establish the corpus delicti for attempted first-degree criminal sexual conduct. *Id.* at 327–28. The court of appeals determined that the State's independent evidence did not establish Hill's intent to engage in nonconsensual sexual conduct. *Id.* And because it determined that the State did not present independent evidence of Hill's intent, it concluded that reversal of Hill's conviction was required. *Id.* at 328.

One court of appeals judge dissented, determining that there was sufficient independent evidence to establish the corpus delicti of attempted first-degree criminal sexual conduct. *Id.* at 330 (Reyes, J., dissenting). According to the dissent, the State need not corroborate every element of the charged crime, and the State "undisputed[ly]" established "three of the four elements" of first-degree criminal sexual conduct. *Id.* Thus, according to the dissent, the State satisfied its burden under the corpus delicti statute to produce evidence that " 'reasonably tends to prove' " that Hill attempted to engage in forcible sexual penetration. *Id.* (quoting *Holl*, 966 N.W.2d at 814).

Alternatively, the dissent concluded, even if the corpus delicti statute requires independent evidence of intent, the State presented sufficient circumstantial evidence showing Hill's intent to engage in forcible sexual penetration of C.L. *Id.* at 331–32. The

14

dissent pointed to M.K. and C.L.'s testimony as well as the reasonable inferences that can be drawn from them:

> [Hill] did not have to overtly express his intentions during the assault because his conduct demonstrated that he was executing his plan to sexually assault C.L. He cased C.L.'s workplace by visiting it several times before the incident occurred. He asked C.L. to show him an apartment under false pretenses. Then, when he had her alone in the apartment, he forced her into a closet, locked the door behind him, pushed her flat on the ground, and began choking her. . . . Not only do these circumstances "reasonably tend[] to prove" [Hill's] guilt, but they point unerringly to the only conclusion that a woman in C.L.'s situation would reach: that [Hill] intended on engaging in criminal sexual conduct . . . .

*Id.* at 333.

### D.

We now consider whether the court of appeals' rule—that for an attempt crime, the corpus delicti statute requires independent evidence of both a defendant's intent and a substantial step toward commission of the underlying offense—accurately reflects Minnesota law.

The State argues that the court of appeals' approach is inconsistent with the corpus delicti statute and our case law. It contends that the court of appeals drew an unnecessary distinction between attempt crimes and completed crimes. According to the State, the standard we articulated in *Holl*—which requires independent evidence "that reasonably tends to prove" the defendant committed the charged offense—should apply to both completed crimes and attempt crimes. *Holl*, 966 N.W.2d at 814.

Hill, on the other hand, observes that completed crimes and attempt crimes are qualitatively different. Thus, he argues, the corpus delicti for these types of crimes must

15

also be different. Hill advocates for the "gravamen" approach adopted by the court of appeals. According to Hill, this approach comports with how we have described what the corpus delicti is: the " 'substance or foundation' " of the crime. *See McCoy*, 963 N.W.2d at 477 n.1 (quoting *Corpus Delicti*, *Black's Law Dictionary* (5th ed. 1979)). Hill also supports the court of appeals' bright-line rule requiring independent evidence of a defendant's intent to commit an underlying crime to establish the corpus delicti for attempt crimes. He points out that an attempt offense generally does not result in the infliction of any harm. And he argues that without independent evidence of a defendant's intent to commit the offense, the corpus delicti statute becomes meaningless for attempt offenses.

In our view, the better rule—and the rule most consistent with the corpus delicti statute itself and our case law—is the rule that we recently articulated in *Holl*. There, we stated that the plain language of the corpus delicti statute is satisfied when there is independent evidence "that reasonably tends to prove" the defendant committed the charged offense. *Holl*, 966 N.W.2d at 814. We now hold that this rule applies to both completed offenses and attempt offenses. Accordingly, we reject the court of appeals' holding that, to establish the corpus delicti for attempt crimes, the State must present independent evidence of both a defendant's intent to commit the underlying crime and a substantial step toward the commission of the underlying crime. Instead, the corpus delicti statute, section 634.03, is satisfied when the State presents independent evidence that reasonably tends to prove the defendant committed the charged attempt offense.

We are persuaded that this rule should apply to both completed offenses and attempt offenses for two reasons. First, it best reflects the limited purpose of the corpus delicti

16

statute: to avoid prosecutions for nonexistent crimes when the only evidence of the crime is a defendant's confession. *See Holl*, 966 N.W.2d at 809 (stating that the corpus delicti statute "seeks to ensure the State 'has established the occurrence of a crime before introducing the statements or confessions of the accused' " (quoting *Taylor*, 831 A.2d at 590)). Our cases show that the quantum of evidence necessary to achieve this limited purpose is not high. *See, e.g.*, *State v. McLarne*, 150 N.W. 787, 789 (Minn. 1915) (requiring, for arson, corroboration that a building burned and that "the origin of the fire . . . was the criminal act of defendant, or any one else"); *State v. Wylie*, 186 N.W. 707, 708–09 (Minn. 1922) (focusing on whether the crime of larceny occurred at all and, if so, whether there was evidence corroborating the identity of the individual who committed larceny); *State v. Voges*, 266 N.W. 265, 266 (Minn. 1936) (defining the corpus delicti of homicide as "the death of a human being and that a criminal agency produced it" (citation omitted) (internal quotation marks omitted)); *see also McCormick on Evidence* § 146 ("Only 'slight' corroborating evidence [of the corpus delicti] is often required . . . ." (citations omitted)). Imposing a heightened standard for independent evidence in attempt cases therefore would be incongruous with the limited purpose of the corpus delicti statute.

Second, we have held that the plain language of the corpus delicti statute "does not require that each element of the offense charged be individually corroborated." *Holl*, 966 N.W.2d at 814 (citation omitted) (internal quotation marks omitted). The court of appeals' decision—requiring independent evidence in every attempt case of both a defendant's intent to commit a completed crime and a substantial step toward commission of that crime—effectively necessitates corroboration of each element of a charged offense,

17

contrary to the plain meaning of the corpus delicti statute. Because the statute itself does not prescribe any quantum of proof or formula for assessing independent evidence, adopting an element-specific requirement for a particular category of cases would require us to read additional language into the statute. We decline to do so. *See Noggle*, 881 N.W.2d at 550 (stating that we do not read additional language into a statute).

Hill argues that some of our case law has, at times, required independent corroboration of a defendant's intent to establish the corpus delicti. He contends that the court of appeals' approach—requiring independent proof of a defendant's intent for attempt offenses—is consistent with our earlier decisions. For example, Hill notes, we stated in *State v. McLarne* that "to prove the corpus delicti in arson, it is necessary to show, not only that the building burned, but that the fire was designedly set by some one." 150 N.W. at 789. In *State v. McTague*, we reiterated that the corpus delicti rule requires corroboration of both a fire and the criminal nature of the fire in arson cases, stating that "proof of the corpus delicti requires proof of the burning of the building and proof that the fire was criminally set." 252 N.W. 446, 446 (1934). And in *State v. Plagman*, we noted that the corpus delicti of arson is "[t]hat there was a fire willfully set by someone," and we upheld the defendant's arson conviction. 121 N.W.2d at 623. Hill argues that these are examples of this court holding that intent "is a required part of the corpus delicti" for certain crimes.

We do not read these cases to establish a rule requiring independent corroborating evidence of a defendant's intent. None of the arson cases cited by Hill require the State to corroborate *the defendant's* mental state. Rather, they merely require evidence

18

independent of the defendant's confession that the fire resulted from a criminal act, instead of an accident or natural cause. *See McLarne*, 150 N.W. at 789 (requiring only that the State corroborate that "the fire was *designedly set by some one*" as opposed to an accidental or naturally occurring cause (emphasis added)); *McTague*, 252 N.W. at 446 (requiring only that the State corroborate that "the fire was *criminally set*" as opposed to an accidental or naturally occurring cause (emphasis added)); *Plagman*, 121 N.W.2d at 623 (requiring only that the State corroborate that the fire was "*willfully* set *by someone*" as opposed to an accidental or naturally occurring cause (emphasis added)).

Hill points to our decision in *State v. Koskela* as an additional indication that we have required corroboration of a defendant's intent to establish the corpus delicti for certain offenses. 536 N.W.2d 625 (Minn. 1995). The victim in that case was stabbed to death in the bedroom of her apartment. *Id.* at 626–27. Initially, the case went unsolved. *See id.* at 627. But almost three years after the murder, the police learned that Koskela had confessed to three witnesses that he had entered the victim's apartment through a balcony and murdered her. *Id.* at 627–28. He told two of these witnesses that he had planned to rob the victim. *Id.* at 628. Following his arrest, Koskela confessed to the police. *Id.* at 627–28. During that confession, he told the police that he did not enter the apartment to burglarize or rob the victim. *Id.* at 628.

Based on his confessions and other evidence, Koskela was charged with first-degree felony murder and first-degree burglary. *See id.* at 626. A jury found him guilty of both offenses. *Id.* at 626, 629. On appeal to this court, Koskela argued that the evidence was insufficient to establish that he committed a first-degree burglary because there was no

19

evidence of his specific intent to burglarize the victim other than his confessions to the two witnesses. *Id.* at 629. We cited the corpus delicti statute, observing that a defendant's confession "is not sufficient to sustain a conviction without evidence that the offense charged has been committed." *Id.* (citing Minn. Stat. § 634.03). And citing a sufficiency-of-the-evidence case, we stated, "In a burglary case, this court has held that it is not necessary for the state to prove that anything actually was taken from the premises in order to meet its burden of proof—the critical point is the defendant's intentions." *Id.* (citing *State v. Hall*, 176 N.W.2d 254, 258 (Minn. 1970)). We then concluded that there was sufficient "corroborative evidence" for the jury "to determine that [Koskela] had the intent to commit burglary when he entered the victim's apartment." *Id.* The court noted that Koskela had confessed his intent to rob the victim to two witnesses and that the circumstances of the offense "could lead a jury to reasonably conclude that [Koskela] entered the dwelling with the intent to commit burglary." *Id.*

We disagree with Hill that our decision in *Koskela* announced a requirement for independent evidence of a confessing defendant's intent to commit a charged offense. The decision does not explicitly adopt this requirement. And we are unable to glean any such requirement from our analysis in *Koskela*. Although we referenced the corpus delicti statute, the issue before the court was Koskela's claim "that the state failed to prove beyond a reasonable doubt the elements of burglary in the first degree." *Id.* Moreover, in determining that there was sufficient "corroborative evidence" of Koskela's intent, we relied, in part, on his *confessions* that he intended to burglarize the victim. *Id.* We went on to determine that the State presented sufficient evidence to prove beyond a reasonable

20

doubt that Koskela committed a first-degree burglary. *Id.* Given our analysis in *Koskela*, we cannot conclude that the decision requires independent evidence of intent to establish the corpus delicti for an offense.

Although the corpus delicti statute does not require independent evidence of every element of an offense, we emphasize that confessing defendants are entitled to the additional protection of due process under the federal and state constitutions. "Due process requires that the State bear the burden of proving beyond a reasonable doubt every element of a charged offense in a criminal trial." *State v. Pakhnyuk*, 926 N.W.2d 914, 919 (Minn. 2019). This constitutional requirement ensures that convictions are based on sufficient evidence of each element of a crime.

As to the evidence required to satisfy our corpus delicti statute, however, we instruct courts to apply the standard we established in *Holl*: the independent evidence must "reasonably tend[] to prove that the specific crime charged in the complaint actually occurred." *Holl*, 966 N.W.2d at 814. The State need not corroborate each individual element of the underlying offense, and circumstantial evidence can be sufficient to corroborate a defendant's confession. *Id.*

II.

A.

With this rule in mind, we now consider whether the evidence independent of Hill's confession was sufficient to satisfy the corpus delicti statute for attempted first-degree criminal sexual conduct.

We initially address the court of appeals' concern that the State's evidence did not satisfy the corpus delicti for attempted first-degree criminal sexual conduct because there was no independent evidence of Hill's intent to sexually penetrate C.L. during the encounter. Citing some of our sufficiency-of-the-evidence cases, the court of appeals focused on the lack of independent evidence of a sexual nature. *Hill*, 10 N.W.3d at 327. For example, the court of appeals observed that in *State v. Wallace*, 558 N.W.2d 469, 473 (Minn. 1997), we affirmed the defendant's conviction for attempted second-degree criminal sexual conduct where the defendant "unbuckled and began to remove the belt on his pants," in addition to other evidence. *Hill*, 10 N.W.3d at 327. And in *State v. Welch*, 675 N.W.2d 615, 617–20 (Minn. 2004), we affirmed the defendant's attempted criminal sexual conduct conviction based on evidence that the defendant made statements to the victim with a "discernable sexual overtone" and other-acts evidence showing that the defendant had engaged in similar sexual assaults in the past. *Hill*, 10 N.W.3d at 327. (internal quotation marks omitted). The court of appeals recognized that these cases, which evaluated the sufficiency of the evidence, required the State's evidence to meet the higher burden of proof beyond a reasonable doubt. *Hill*, 10 N.W.3d at 327. But the court of appeals used these decisions to highlight the lack of similar evidence in Hill's case. *Id.*

We disagree that such evidence is necessarily required to establish the corpus delicti for an attempted criminal sexual conduct offense. In considering the sufficiency of the evidence underlying an attempted criminal sexual conduct conviction, we have observed that "[w]hat is sufficient in one case might not be sufficient in another." *State v. Degroot*, 946 N.W.2d 354, 363 (Minn. 2020). For this reason, we have determined that "no definite

22

rule, applicable to all cases, can be laid down as to what constitutes an [attempt] within the meaning of our statute." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted). Instead, "[e]ach case must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom." *Id.* (citation omitted) (internal quotation marks omitted). In the context of the corpus delicti statute, which imposes a lesser burden than the due process requirement for proof beyond a reasonable doubt, we similarly reject any formulaic approach to deciding whether the independent evidence reasonably tends to prove the commission of the specific crime charged.

We now apply our *Holl* rule to the State's evidence in this case. The State's evidence was as follows: Before the date of the offense, Hill made multiple visits to the apartment building where C.L. was employed. On the day of the attack, Hill went to the apartment building with a knife. Hill asked C.L. to show him a vacant apartment. Once they entered a vacant apartment, Hill inquired about the bathroom, which C.L. construed as an attempt to get her into the confined space of that room. When C.L. did not enter the bathroom, Hill shoved her into a closet. He leaned over C.L. and choked her as C.L. attempted to fight back. M.K. tried to enter the apartment in response to C.L.'s screams, but she was unable to open the door. C.L. knew that she had not locked the door behind her. After the incident, C.L.'s neck was red and bruised, and she felt pain in her neck and body.

The State's evidence reasonably tends to prove that Hill committed the offense of attempted first-degree criminal sexual conduct causing personal injury using force or coercion. It is reasonable to infer from the evidence—which shows that Hill went to the

23

apartment building armed with a knife, persuaded C.L. to take him to a vacant apartment, locked the door, knocked C.L. to the ground, loomed over C.L. while she was on her back, and choked C.L.—that Hill intended to sexually penetrate C.L. without consent and took a substantial step toward committing that offense. Minn. Stat. § 609.17, subd. 1; Minn. Stat. § 609.342, subd. 1(e)(i). Thus, the State satisfied its burden of establishing the corpus delicti for attempted first-degree criminal sexual conduct, as required by section 634.03, and the court of appeals erred in concluding otherwise. We accordingly reverse the decision of the court of appeals.

B.

Because the court of appeals reversed Hill's conviction pursuant to section 634.04, it did not address the additional issues that Hill raised on appeal. Hill's counsel raised two additional issues before the court of appeals, and Hill raised several arguments in a pro se supplemental brief. *Hill*, 10 N.W.3d at 320–21. When we reverse a court of appeals decision and are confronted with questions the court of appeals did not reach, a remand may be appropriate. *See Dupey v. State*, 868 N.W.2d 36, 41 (Minn. 2015); *State v. Ross*, 732 N.W.2d 274, 276 n.3 (Minn. 2007). We determine that a remand to the court of appeals to address the additional issues raised by Hill is appropriate. Therefore, we remand to the court of appeals to consider those remaining issues.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the court of appeals for further proceedings consistent with this opinion.

Reversed and remanded.